1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Michael Jones,

                      Plaintiff,

                      -a-


Joseph Smith, John Maly, Padro Diaz, Lt. Gardner,
John Rapp, Maryann Genovese, Catherine Wells,
Rabbi A. Horowitz, Lt. Palen, C.O. Brooks,
Sgt. Kimbler, William Brown, Thomas Griffin,
Olga Khramova, Mikhail Gusman, Louis Pingotti,
Steven Schoonmaker, Earnel Bodison,
Jane Doe, Brian Fisher,

                      Defendant's
----------------------------------------------------------X

9:09-co-1058

Inmate Civil Rights
Complaint pursuant to
42 U.S.C. §1983

Civil No._____

U.S. DISTRICT COURT - N.D. OF N.Y.
**F I L E D**
SEP 16 2009
AT____O'CLOCK
Lawrence K. Baerman, Clerk - Syracuse

     Plaintiff in the above-caption action, allege(s) as follows:

### JURISDICTION

     1). This is a civil action seeking relief and/or damages to
defend and protect the rights guaranteed by the Constitution of
the United States. This action is brought pursuant to 42 U.S.C.
§§1983, 2000 et. This Court has jurisdiction over this action
pursuant to 28 U.S.C. §§ 1331, 1343(3), (4), and 2201.

### PARTIES

     2). Plaintiff: Michael Jones #90-A-5292

          Address:   Clinton Corr. Fac., P.O. Box 2001

                     Dannemora, NY 12929

### PARTIES

     3). Defendant-a: Joseph Smith, Superintendent

                      Swangunk Corr. Fac., P.O. Box 700

                      Wallkill, NY 12589

2

Defendant-b: John Maly, Dept. Superintendent

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-c: Pedro Diaz: Regional Health Service Adm.

The Harriman State Campus-Bld. #2

1220 Washington Ave.

Albany, NY 12226-2050

Defendant-d: Lt. Gardner, Lieutenant

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-e: John Rapp, Food Service Adm.

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-f: Maryann Genovese, MD

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-g: Catherine Wells, Administrative Nurse

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-h: Rabbi A. Hirowitz, Rabbi

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-i: Lt. Palen, Lieutenant

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-j: C.O. Brooks, Correctional Officer

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-k: Sgt. Kimbler, Sergeant

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-l: William Brown, Superintendent

Eastern Corr. Fac., P.O. Box 338

Napanoch, NY 12458

Defendant-m: Thomas Griffin, Dept. Superintendent

Eastern Corr. Fac., P.O. Box 338

Napanoch, NY 12458

Defendant-n: Olga Khramova, Nurse

Eastern Corr. Fac., P.O. Box 338

Napanoch, NY 12458

Defendant-o: Mikhail Gusman, MD

Eastern Corr. Fac., P.O. Box 338

Napanoch, NY 12458

Defendant-p: Louis Pingotti, Captain

Eastern Corr. Fac., P.O. Box 338

Napanoch, NY 12458

Defendant-q: Steven Schoonmaker, Correctional Officer

Eastern Corr. Fac., P.O. Box 338

Napanoch, NY 12458

Defendant-r: Jane Doe: Sergeant

Eastern Corr. Fac., P.O. Box 338

Napanoch, NY 12458

Defendant-s: Earnel Bodison, Correctional Counselor

Shawangunk Corr. Fac., P.O. Box 700

Wallkill, NY 12589

Defendant-t: Brian Fisher, Commissioner of Corr.

The Harriman State Campus-Bld. #2

1220 Washington Ave.

Albany, NY 12226-2050

## PLACE OF PRESENT CONFINEMENT

4-a. There is a grievance procedure at both facilities.

b. plaintiff filed a grievance at both facilities.

c. some grievances was denied, some was not answered.

d. all the grievances was appealed.

## PREVIOUS LAWSUITS

5. 1-a. <u>Jones v. Braken, et al</u>

b. Western District of New York.

Hon. H. Kenneth Schoreder, Jr.

Docket No. 02-CV00055(SR).

Submitted, July, 2002, Disposition: October 2008.

Settled in favor of plaintiff.

2-a. <u>Jones v. Artuz, et al</u>

   b. Docket No. 01-CV-4652(JES)

   c. Southern District of New York.

   d. Hon. Sprizzo.

   e. Don't recall filing dare or disposition date.

   f. Dismissed, failure to state a claim.

3-a. <u>Jones v. Artuz, Rinihand</u>.

   b. Don't recall docket No.

   c. Southern District of New York.

   d. Don't recall Judges name.

   e. Don't recall date of filing date or disposition.

   f. Dismissed, failure to state a claim.

3-a. <u>Jones v. Warden Derosa, et al</u>.

   b. Don't recall Docket No.

   c. Eastern District of New York.

   e. File date, January 1990, disposition date June 1993.

   f. Settled in favor of plaintiff.

## FACTS

6-a. Plaintif, Michael Jones, brings action under the First, Eighth. and Fourtheeth Amendments of the U.S. Constitution: 42 U.S.C. §1983; 42 U.S.C. §200 et, "RLUIPA". Claiming that defendants violated and failed to comply with State and Federal regulations denying adequate medical treatment in violation of his serious medical needs.

6

b. Denying plaintiff adequate nutritional meals; denying plaintiff's right to bye free from discrimination; denying plaintiff equal protection as other inmates of similar class; violation of the Establishment Clause; denying plaintiff his rights to freely practice this religion while confined; retaliation against plaintiff for expression of his free speech; and for injunction relief.

c. By operation of State and Federal laws, plaintiff's movement is controlled by New York State Department of Correctional Services. From April 18, 1990, until the present, plaintiff is an inmate in the custody of the New York State Department of Correctional Service. All defendant's are sued in their individual and official capacity.

**FIRST CAUSE OF ACTION**
**Violation Of Plaintiff's Serious**
**Medical Needs; Cruel and**
**Unusual Punishment**

d. On or about September 2006, Dr. Galeno conducted a back surgery on plaintiff consistent of fusion the L4, L5, and S1 Lumbar Spine and Laminectomy Excision of the L4, L5, and SI herniated disk. Approximately two weeks after the surgery, Dr. Galeno fitted plaintiff with a special back brace to hold plaintiff's back in place while he sit up and heal properly.

e. On or about October 3, 2006, plaintiff returned to Shawangunk Correctional Facility, (hereafter, Shawangunk), Defendant Maryann Genovese (hereafter, Genovese), took plaintiff's Special back brace and tool plaintiff off pain medication. Approximately one day later, plaintiff was discharged from the facilities hospital and sent to his cell.

f. Plaintiff complain to defendant Genovese on a number of occasions that his mattress was inadequate and cause extreme pain in his lower back that kept him up at night, and he couldn't sip up to read or write because he had taken his special back brace. Defendant Genovese denied plaintiff's request for special mattress by stating that Dr. Galeno didn't prescribed anything concerning a mattress and the back brace was taken because it could be used as a shield against attacks. Plaintiff asked defendant Genovese if she would not return his back brace, he would like to be provided with a chair for his cell so he would be able to sit up. The request was denied.

g. On or about October 25, 2006, plaintiff went on his follow-up appointment to Dr. Galeno. Dr. Galeno asked plaintiff why was he not wearing the special back brace and it was too soon to not be wearing it. Plaintiff told Dr. Galeno that defendant Genovese took the brace when he got back to the facility. Dr. Galeno said the back brace was especially made for plaintiff to hold his back in place so he could sit straight while his back heal. Plaintiff told Dr. Galeno that he was experiencing extreme back pain because his mattress was inadequate and kept him up at night.

h. Dr. Galeno informed plaintiff to tell defendant Genovese to provide a special mattress because he had preformed back surgeries for many years and special mattress are needed, especially for plaintiff's back brace and send plaintiff's x-rays slides he previously requested.

i. Plaintiff continued to complain to defendant Genovese about the constant extreme back pain especially at night which cause lack of sleep. Plaintiff told defendant Genovese that Dr. Galeno had preformed back surgeries for many years and requested that plaintiff receive a special mattress and to return his back brace. Defendant Genovese stated that she didn't care what Dr. Galeno said or how many operations he preformed, she wouldn't order a special mattress. a chair or return the back brace because they were security issues.

j. Thereafter, plaintiff spoke with defendant Joseph Smith, (hereafter, Smith), while making his rounds through C-Block, and asked him why plaintiff couldn't have a special mattress, back brace or chair in his cell because his mattress causes extreme pain and plaintiff couldn't sleep through the pain. Defendant Smith stated that plaintiff's problem were an issue that should be addressed with the medical department. Plaintiff explain to defendant Smith that he had address the issue with defendant Genovese and she stated that a special mattress, chair and back brace was security issue. Defendant Smith stated that he has nothing to do with the medical department and a special mattress, chair and back brace was not a security issue. Plaintiff told defendant Smith that he was the Superintendent and could make sure he was provided with the things he needed. Defendant Smith stated that he would look into the problem.

k. Defendant Genovese denied plaintiff's request and stated that the State don't provide any form of special mattresses or chairs for cells and if she was to give plaintiff one, she would have to give every inmate in Shawangunk one. Plaintiff ask defendant about his back brace and whether she was going to send the x-ray slides on his next follow-up visit. Defendant Genovese stated that she had no idea where the back brace was, and let her worry about the x-ray slides.

l. on or about March 14, 2007, plaintiff went to his next follow-up appointment. Defendant Genovese didn't sent the x-ray slides. Plaintiff complain about the continued extreme back pain and his lack of sleep. Dr. Galeno ask plaintiff whether he received the special mattress he requested for him, and was his back brace returned as requested. Plaintiff stated that he has not to both questions.

m. Dr. Galeno stated that he didn't understand why defendant would not provided the items he requested but he would put in another written request, and that it was obvious that plaintiff needed the special mattress and back brace. Dr. Galeno also requested that x-ray slides be sent on plaintiff's next follow-up.

n. upon plaintiff's next appointment with defendant Genovese, he continued to complain about extreme back pain and the lack of sleep, and informed defendant Genovese that Dr. Galeno wrote a request for a special mattress and re turn has

brace because it was obvious that after such an extensive back surgery. plaintiff needed the requested items, not just for the relief of back pain but to help plaintiff heal properly. Defendant Genovese denied plaintiff's request and state that she didn't care what Dr. Galeno said, she was not issuing any form of special mattress, chair of back brace and it did not matter how much plaintiff's back hurt or how much sleep he lose. Defendant gave plaintiff an exercise chart and told plaintiff to use it. Defendant Genovese told plaintiff that he would not have to worry about what Dr. Galeno said cause she was cancelling any further follow-up visits to him.

o. Plaintiff continued to complain to defendant's Genovese and Smith when ever he made his rounds about extreme back pain and the lack of sleep. Each time plaintiff asked to be provided with a special mattress, his back brace or chair for his cell.

p. Plaintiff's pain continues to persist every day. Plaintiff's pain consist of sharp stabbing pain of the left and right sides of the middle and lower back. The pain rates from a foru (4) to ten (10), on the pain scale. Plaintiff cannot lay flat on his back or on his stomach. Plaintiff only potion is to lay on his left or right sides. The State issued mattress is flat, hard approximately one inch in thickness with no form of support. Because of the lack of his back brace, plaintiff's lower back healed improperly, "i.e. straight with no natural arc", which is why plaintiff can't lay on his back or on his stomach.

q. Because of the flat, hard non-supportive mattress, plaintiff's back pain becomes so extreme that he can no longer receive a full night sleep. Each night plaintiff toss and turn from his left to right side. Some nights the pain becomes so unbearable that he has to sit up on the side of his bed until the pain subsides. plaintiff often wakes up mornings with pain and stiffness in his lower back, left and right shoulders, with left and right hip bone numbness.

r. plaintiff cannot sit up for long periods of time without a chair with back support, after approximately ten or fiftheen minutes, plaintiff experiences extreme sharp pain in his lower back and remain stiff for days. The cells lack chairs and any proper support for plaintiff to sit down and write or read.

s. Defendant Genovese constantly gives's plaintiff medications which consist of the following: Ibuprofen 600, "which causes serious stomach pain and problems"; Gabapetine 800m, "which is for seizures and did nothing for plaintiff's back pain"; Piroxicam 20m, "which causes plaintiff serious stomach pain and problems"; and Omeprazole 20m, "to attempt to deal with plaintiff's stomach pain". none of the above medications work to stop the extreme pain and morning stiffness cause by the State issued mattress.

t. On or about August 10, 2007, plaintiff wrote a letter of complaint and request of a special mattress and chair to Dr. Lester Wright, Chief medical officer of the Department of Correctional Service and submitted a grievance complaint and request to Shawanguni's Grievance Committee.

u. on or about August 23, 2007, defendant Caterine Wells, (hereafter, Wells), responded to plaintiff's Grievance and denied his request.

v. on or about September 20, 2007, defendant Pedro Diaz, (hereafter, Diaz), responded and denied plaintiff's complaint and request.

w. on or about October 17, 2007, Central Office Review Committee, (hereafter, CORC), denied plaintiff's grievance.

x. After continued extreme back pain, plaintiff wrote another request complaint Dr. Lester Wright, and submitted a grievance complaint on or about January 2, 2009.

y. In response to plaintiff's grievance, defendant Genovese unlawfully released plaintiff's medical records to the grievance office in violation of 7 N.Y.C.R.R, 5.24[b], and denied plaintiff's request and complaint.

z. Plaintiff's request and complaint was denied by CORC on February 25, 2009.

a-1. On or about February 25, 2009, defendant Diaz responded for Lester Wright, and denied plaintiff's request and complaint.

### SECOND CAUSE OF ACTION
Religious Violation; Cruel And Unusual Punishment
Establishment Clause Violation; RLUIPA;
Equal Protection Violation; Discrimination

7-a. Plaintiff converted to the Jewish faith on or about January 2004. In March 2007, plaintiff went to the prison Chapel and ask defendant Rabbi Horowitz to provide him with the following: guidance and literature on what to eat, all the Jewish holidays and passover; instructions on what to do no Jewish Holidays: and any literature on the Jewish faith.

b.   Defendant Rabbi Horowitz responded by stating that plaintiff must be joking and he did not like people like plaintiff playing with his religion and he would not provide plaintiff with anything concerning the Jewish religion.

c.   On or about December 2008, plaintiff ask defendant Rabbi Horowitz to help him receive at least two hot meals per day and to change the Kosher Menu because he had been eating the same high sodium cold meals for the past five (5) years, without any change in the Kosher Menu.

d.   Defendant Rabbi Horowitz stated that it was not his job to help plaintiff get hot meals and he did not care if plaintiff eat the same meals until he is released.

e.   Plaintiff has a history of high blood pressure and defendant Genovese advised plaintiff to abstain from eating food high in sodium contents.

f.   On or about January 20, 2009, plaintiff submitted a grievance complaint requesting that he be provided with a low sodium Kosher Diet, because his Kosher Diet was very high in soduim.

g.   Defendant John Rapp, (hereafter, Rapp), denied plaintiff's request to be provided with a low sodium meal, and stated the plaintiff would have to sigh off his Kosher Diet and accept a non-Kosher prescribed medical diet.

h.   Plaintiff appeal defendant Rapp's denial to defendant Smith who affirmed defendant Rapp's denial. CORC denied plaintiff's request as well.

i. On or about March 29, 2009, plaintiff requested to be provided with at least two meals per day as requested by the American Correctioanl Assn. Standards of Adult Correctional Intitution, Standard's 3-4297; 3-4289, because he had been eating the same high sodium meal for the past five (5) years without a change in the Kosher menu.

j. Defendant Rapp responded by denying plaintiff's request and stated that the Kosher Diet is provided by the menu per Central Office Food Service, and hot meals are only provided on Jewish Holidays and that if plaintiff wanted hot meals, he should transfer to Green Haven Correctional Facility.

k. Plaintiff appeal defendant Rapp's denial to defendant Smith who affirmed defendant Rapp's denial. CORC denied plaintiff's request.

l. On or about June 23, 2009, plaintiff's blood pressure went up on high that he had to change from his Kosher Diet to non-Kosher diet of low sodium.

m. Plaintiff received a high sodium cold Kosher Diet three times a day, seven says a week for the past five years. The cold Kosher Diet consist of the same three repetitiously cold meals prepared one day in advance for Monday, Tuesday, Wednesday, Thursday and Friday. The Saturday and Sunday means are prepared on Friday which is two days before Sunday. Each meal is prepared by a non-Jewish inmates.

n. Some days the coldcuts are discolored, and/or spoiled and the tuna is opened the previous day and left in it's original can that leaves rust around the top of the lid. The coldcuts and cup-a-soups, and cheese are very high in sodium and not nutritional suitably for a person with high blood pressure.

### THIRD CAUSE OF ACTION
Retaliatory Transfer; Cruel and
Unusual Punishment; Serious Medical
Needs

8-a. On of about the month   of August 2008, plaintiff conducted a phone conference between himself, Assistant Attorney General Kim S. Murphy, and Hon. H. Kennenth Schroeder of the Western District of New York. The phone conference concerning settlement of an action against two correctional officer's from the Attica Correctional Facility. Defendant Earnel Bodison, (hereafter, Bodison), was present in the room during the phone conferen^ce. After the call was completed, defendant Bodison asked plaintiff what was the nature and particular's of the claims, which plaintiff explain the details.

b. On or about February 9, 2009, defendant Bodison placed plaintiff on a callout to his office and asked plaintiff did he want a transfer out of the facility. Plaintiff responded that he did not want a transfer because the present facility was very close to his wife. Plaintiff asked defendant Bodison why did he call him for an interview because he had been plaintiff's counselor for some time and was never called for an interview. Defendant Bodison stated that it was time for plaintiff to leave the facility.

c. On or about January 2, 2009, plaintiff submitted a grievance and wrote a a complaint concerning the lack of a special mattress and chair for his cell, <u>see, Cause One</u>. On or about January 20, 2009, plaintiff submitted a grievance complaint requesting to be provided with a low sodium Kosher meal, <u>see, Cause Two</u>. On or about February 20, 2009, plaintiff received a settlement check for approximately $1,150, for the claim against Attica Correctional Facility.

d. On or about March   29, 2009, plaintiff submitted a grievance requesting that he was being discriminated against and to be provided with at least two hot Kosher meals per day, <u>see, Cause Two</u>.

e. On or about April 16, 2009, plaintiff submitted a grievance complaint after his cell was destroyed in a cellsearch that was ordered by defendant Gardner in retaliation for past grievances and the settlement payment. On or about April 16, 2009, plaintiff submitted a grievance complaining the defendant's John Maly, (hereafter, Maly), Lt. Palen, Sgt. Kimbler and C.O. Brooks denied plaintiff's wife entry into the facility for a Family Reunion Visit as retaliation for past grievances and the settlement payment.

f. On or about May 7, 2009, defendant Bodison placed plaintiff on a callout to his office for a interview and advised plaintiff that he had to leave Shawangunk. Plaintiff asked defendant Bodison why did he have to leave the facility. to which he stated, "you know why".

g. On or about May 11, 2009, Shawangunk's draft officer came to plaintiff's cell to pack up his property because he was being transferred put of the facility. Plaintiff ask why was he being transferred. The draft officer stated that all he knew was that his boss wanted him out of the facility.

h. On or about May 12, 2009, defendant's Smith and Maly past plaintiff's cell while making rounds. Plaintiff ask them why was he being transferred out of the facility when his present facility was close to his wife. Defendant Smith stated that plaintiff had been very busy lately. Defendant Maly smiled and said, "have a nice day Mr. Jones".

i. On or about May 11, 2009, defendant Thomas Griffen, (hereafter, Griffen), signed a doublebunk over-rife placement sheet to have plaintiff housed on the top bunk at Eastern Correctional Facility. On or about May 13, 2009, defendant Olge Kheamove, (hereafter, Kheamove), changed plaintiff's medical screen doublebunk placement sheet for plaintiff to be placed on a top bunk to correspond with defendant Griffen's top bunk assessment, even though plaintiff's medical records required that he be housed on a bottom bunk.

j. On or about May 13, 2009, approximately 12:08 a.m., plaintiff was escorted off the draft bus, given a netbag containing bedding supplies and escorted to a cell. Defendant Steven Schoonmaker, (hereafter, Schoonmaker), told plaintiff that he was assign to the top bunk of cell 17-2. Plaintiff said that he could not be placed in a doublebunk cell, especially on the top bunk because of his back injury and bad knees.

k. Defendant Schoonmaker ordered plaintiff to go into cell 17-2 to the top bunk. Plaintiff stated that he would not go into the cell because of his back injury and bad knees, and to do so would put his health in jeopardy. Defendant Sergeant Jane Doe was call and advised of the situation. Defendant Jane Doe spoke with defendant Schoonmaker, then looked at plaintiff and said escort him to Special Housing Unit, (hereafter, SHU), and issued him a ticket.

### FORTH CAUSE OF ACTION
Cruel and Unusual Punishment;
Violation of Right to Privacy;
Hearing Violation; Serious
Medical Needs

9-a. Plaintiff was placed in a cell were the night-light was directly overhead and was so bright that it was impossible to sleep the entire time he was in Eastern SHU.

b. On or about May 16, 2009, defendant Louis Pingotti, (hereafter, Pingotti), commenced plaintiff's hearing. Plaintiff explain to defendant Pingotti that because he have rods and pins in his lower back, and his knees were in a deleterious state which required knee braces, it would be impossible to climb up and down a top bunk because it would cause varying levels of pain and cause him more injuries to his back.

c. Plaintiff further explain that he was prescribed a set of exercises by his physical therapist that had to be done three times per day and that climbing a top bunk would also aggravate his back and defeat the purpose of the back exercises. Defendant Pingotti adjourned the hearing to investigate plaintiff's claims.

d. Defendant Pingotti re-commenced plaintiff's hearing and explain that he had went into plaintiff's medical records and retrieved a medical screen sheet dated December 6, 2001, which stated that plaintiff should not be placed on a top bunk, and a screen sheet dated May 13, 2009, that was sign by defendant Khramova who changed plaintiff double bunk assessment to a top bunk. Plaintiff requested to have his physical therapist called as a witness. Defendant Pingotti stated that he would call plaintiff's witness and adjourned plaintiff's hearing.

e. On or about May 20, 2009, plaintiff spoke with defendant Khramova and asked her why was his screen sheet changed and who authorize defendant Pingotti to retrieve it from his medical records. Defendant Khramova stated that she didn't know what was going on.

f. On or about May 28, 2009, plaintiff spoke with defendant's Brown and Griffin while making their rounds and complained that the night-light was to bright and that he could not sleep because of such. Defendant Brown stated that their is no night-lights in the double bunk cells in population. Plaintiff explain to defendant's Brown and Griffin that the light was so bright that he could read a book, and he had not had a full night's sleep since he been SHU. Defendant Brown told plaintiff to put something over his eye's. Plaintiff said that he had tried that but every time he turn over it would come off and he would wake up. Defendant Brown told plaintiff not to turn over, laugh and walk away.

g. On or about May 29, 2009, defendant Pingotti re-commenced plaintiff's hearing and denied the physical therapist and acknowledged that plaintiff needed to do his exercises three times a day.

h. Plaintiff requested that the facilities doctor be called as a witness. Dr. Bipin J. Bhavsar was called as a witness and testified that plaintiff was not to be placed on a top bunk, and that on his appointment on June 2, 2009, a medical determination would be made as to whether he should be placed in a double bunk cell. Plaintiff requested to have the hearing adjourned until the doctor's appointment. The request was denied by defendant Pingotti.

i. At the conclusion of the hearing, plaintiff objected and made it clear that the ticket must be dismissed because Dr. Bhavsar verified that he was not suppose to be placed on a top bunk. Plaintiff also restated that he is not required to do anything that could would cause him pain, discomfort or something that could prove detrimental to his back injury. Defendant Pingotti agreed, but still found plaintiff guilty of all charges and sentence plaintiff to three (3) month's in SHU, loss of commissary, packages and phone privileges.

j. On or about June 2, 2009, plaintiff went to his appointment to see defendant Mikhail Gusman (hereafter, Gusman), and requested that he be provided with a medical permit to exclude him from being place in a double bunk cell.

k. Defendant Gusman ask plaintiff why did he need such a permit. plaintiff explain what happened at his hearing and explain that because of the nature of his back problems, it would cause him sharp pain each time he would climb in and out of a bottom bunk because he would have to lean forward to do so, and it was impossible for him to climb up and down a top bunk without causing pain.

i. Defendant Gusman told plaintiff to stand up and turn around then looked at his back and said that plaintiff looked okay to him and said that he would only issue a permit to exclude being placed on the top bunk. Defendant Gusman stated that if plaintiff did not want to be placed in a double bunk cell, he should refuse all the time and go to SHU where he could have a single cell that way climbing in and out of bed would not be a problem.

m. Plaintiff ask defendant GAsman about his knee braces and requested a permit to where them while in SHU and to be provided with a special mattress. Defendant Gusman stated that plaintiff would receives his braces once he was release from SHU, and he was not ordering a special mattress.

n. At all times during the events described above, the defendants were engaged in a joint venture. The individual defendant's conspired and assisted each other in performing the various action described and lent their physical presence and support and the authority of their office to each other during the said events.

## FIFTH CAUSE OF ACTION

10-a. Paragraphs 1 through 9 are incorporated herein by reference as though fully set forth.

b. All the above defendant's are sued in their individual and official capacity.

c. Defendant Brian Fisher is the Commissioner of the Department of Correctional Service and fail to train his Supervisor's, Officer's, and Staff. Defendant Brian Fisher fail to make policy to ensure that all plaintiff's State and Federal Right's are secured.

11. Plaintiff demand(s) a trial by **JURY.**

12. **WHEREFORE**, plaintiff prays that this Court grant the following relief: 1. Twenty Million ($20,000,000.00) Intentional Damages; 2). Twenty Million ($20,000,000.00) Punitive Damages; 3. Twenty Million ($20,000,000.00) Compensatory Damages.

13. Injunction Relief consisting of the following; 1. Low Sodium Kosher Diet; 2. Two Hot Kosher meals per day; 3. Special Mattress to relieve back pain; 4. Chair for cell; 5. Knee Braces; 6. and Exclusion from Double Bunk Cells.

I declare under penalty of perjury that the forgoing is true and correct.

DATED  9-11-09   .

Michael Jones   .

**Michael Jones #90-A-5292.**