MICHAEL JONES,

                                        Plaintiff,

                v.                                    9:09-CV-1058 (GLS/ATB)

SMITH, ET AL.,

                                        Defendants.

MICHAEL JONES, Plaintiff, *pro se*
CATHY Y. SHEEHAN, Ass't Att'y Gen., for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## ORDER and REPORT-RECOMMENDATION

     Presently before the court is the defendants' motion for partial summary

judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 124, 125).  This matter was

referred for Report and Recommendation on October 16, 2014 by Chief U.S. District

Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y

(L.R.) 72.3(c).

     In his civil rights complaint, plaintiff alleged that defendants violated his rights

to proper medical care, religious freedom, equal protection, due process, privacy, and

his right to be free from cruel and unusual punishment.  (Dkt. No. 1).  The allegations

stem from his imprisonment, by the New York State Department of Corrections and

Community Supervision ("DOCCS"), at the Shawangunk Correctional Facility

("Shawangunk") and the Eastern Correctional Facility ("Eastern").  Plaintiff is still

incarcerated, but is no longer in the custody of DOCCS.[1]

Following the completion of discovery, defendants filed a partial motion for summary judgment on October 15, 2014 (Dkt. Nos. 124, 125). Plaintiff has opposed the motion for summary judgment; he has also moved to amend his complaint to add three additional parties. (Dkt. No. 131). Defendants did not reply in further support of their motion or respond to the motion to amend.

For the reasons set forth below, this court recommends that defendants' motion for partial summary judgment be granted on the grounds raised therein, and also recommends that the District Court dismiss plaintiff's First Amendment/RLUIPA cause of action *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B). Furthermore, this court denies plaintiff's motion to amend his complaint by adding additional parties.

Since the present motion only sought summary judgment in regards to certain causes of action and certain defendants, this court's recommendation does not resolve all issues in this litigation. Specifically, the following claims survive, solely against defendants in their individual capacities: claims for monetary damages against Dr. Maryann Genovese, Catherine Wells, and Pedro Diaz for medical indifference; a claim against Dr. Genovese for invasion of privacy in plaintiff's First Cause of Action; and claims against Earnell Boddison, Joseph Smith, John Maly, Lt. Gardner, Lt. Palen, Sgt. Kimbler, and C.O. Brooks for alleged retaliation for prior grievances in plaintiff's Third Cause of Action.

---

[1] Plaintiff notified the court, by letter dated August 8, 2014 (Dkt. No. 122), that he now is confined at the George Motchan Detention Center, a facility of the New York City Department of Corrections. *See* http://www.nyc.gov/html/doc/html/about/locate-facilities.shtml

# BACKGROUND

## I.     Facts and Procedural History

### A.     Factual Overview[2]

Plaintiff alleges a number of constitutional violations which occurred while he was an inmate at Shawangunk and Eastern, including: deliberate medical indifference, stemming from an alleged failure to accommodate plaintiff's back pain following surgery; retaliatory treatment, including transfer from Shawangunk to Eastern, in response to plaintiff's history of litigation and grievances at Shawangunk and other DOCCS facilities; and cruel and unusual punishment arising from the nighttime illumination of plaintiff's cell while confined to the Eastern Special Housing Unit ("SHU").  (Compl. ¶ 6-b).  Plaintiff also makes due process claims concerning a disciplinary hearing at Eastern, and a religious liberty claim arising from the limited Kosher menu available at both facilities.  *Id.*

In addition to the defendants directly involved in the incidents alleged in the complaint, plaintiff also makes a broad claim against Brian Fischer, the DOCCS Commissioner during the relevant time period.[3]  Plaintiff alleges that defendant Fischer failed to adequately train and establish appropriate policies for the DOCCS employees under his supervision.  (Compl. ¶ 10-c).

---

[2] Given the breadth of the claims and the number of defendants, the court will detail the relevant facts of each claim below, as necessary to address defendants' motion for summary judgment.

[3] Defendant Fischer is no longer the Commissioner of DOCCS.  The current Acting Commissioner of DOCCS is Anthony J. Annucci.  http://www.doccs.ny.gov/

All defendants were sued in their individual and official capacities. (Compl. ¶ 10-b). In addition to monetary damages on each claim, plaintiff also seeks the following injunctive relief: provision of a low sodium Kosher menu; delivery of two hot Kosher meals per day; provision of a special mattress and a chair in his cell to relieve plaintiff's back pain; return of knee braces confiscated while he was in SHU; and exclusion from any future housing in double-bunk cells to accommodate his back problems. (Compl. ¶ 13).

### B. Procedural History

The original complaint in this action was filed on September 16, 2009. On May 16, 2011, defendants, who are all officials or employees of DOCCS, filed a motion to dismiss plaintiff's civil rights action based upon their allegation that plaintiff had "three strikes" pursuant to 28 U.S.C. §1915(g), and therefore, should not be entitled to proceed *in forma pauperis*. (Dkt. No. 75). Plaintiff responded (Dkt. No. 78) and defendants filed a reply. (Dkt. No. 79). On December 6, 2011, this court recommended that defendants' motion to dismiss be granted, unless a filing fee was paid by plaintiff. (Dkt. No. 83). This recommendation was adopted by the District Court on January 23, 2012. (Dkt. No. 85). On January 25, 2012, plaintiff appealed to the United States Court of Appeals for the Second Circuit (Dkt. No. 86), which reversed the decision of the District Court on July 12, 2013. (Dkt. 90).

Now, upon completion of discovery, all defendants move for summary judgment regarding plaintiff's claims for monetary relief against the defendants in their "official capacities," and against all injunctive relief, due to plaintiff's

4

subsequent transfer to a different prison. Certain defendants also move for summary judgment as to all or some of the claims against them in their individual capacities.

## C.    Deficiencies in Plaintiff's Opposition Papers

As required under L.R. 7.1, defendants have filed a Statement of Material Facts. (Dkt. No. 124.)  Although plaintiff has responded to the Statement of Material Facts filed by Defendants (Dkt. No. 131), he has failed to do so in the manner required under L.R. 7.1(a)(3).  Under this rule, the opposing party's response to the movant's statement of material facts "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises." Although plaintiff has admitted or denied many of the defendants' assertions and has submitted two volumes of exhibits in support of his response, his Response to the Statement of Material Facts is inconsistent with L.R. 7.1.

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the local rule provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not

required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted).  In deference to plaintiff's pro se status and his attempt, albeit inadequate, to respond to defendants' statement of material facts, the court has opted to review the entire summary judgment record.

## DISCUSSION

## I.     Summary Judgment–Applicable Law

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with

specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

"[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (citing, *inter alia*, *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest")). "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

## II. Mootness/Injunctive Relief

### A. Legal Standards

A case is moot, and the court has no jurisdiction when the "parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Federal courts are without power to decide questions that cannot affect the rights of the parties in the case before the court. *See Swaby v. Ashcroft*, 357 F.3d 156, 159-160

(2d Cir. 2004) (petitioner's injury must be traceable to respondent and likely to be redressed by a favorable judicial decision). The plaintiff must have a "personal stake" in the litigation. *Fox v. Board of Trustees of the State University of New York*, 42 F.3d 135, 140 (2d Cir. 1994).

The Second Circuit has held that an inmate's request for prospective injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. *See, e.g., Day v. Chaplin*, 354 F. App'x 472, 473 (2d Cir. 2009) (citing *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976)); *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (citations omitted). There is an exception to the mootness doctrine for challenged actions that are "capable of repetition, yet evading review." See *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). This exception will be applied—provided the action is not a class-action lawsuit–if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *Id*. (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)); *Muhammad v. City of New York Dep't of Corr.*, 126 F.3d 119, 123 (2d Cir.1997). Transfer of an inmate does not moot monetary damage claims. *See Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989).

## B.    Analysis–All Defendants

Plaintiff was transferred from Eastern to Clinton Correctional Facility

("Clinton") on or about July 2009[4]. (Dkt. No. 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 17, ¶ 70). In this proceeding, commenced September 11, 2009, plaintiff seeks injunctive relief consisting of the following: (1) a low sodium Kosher diet; (2) two hot Kosher meals per day; (3) a special mattress to relieve his back pain; (4) a chair for his cell; (5) knee braces; (6) and (7) exclusion from double bunk cells. (Compl. ¶ 13).

Plaintiff does not allege that any of the alleged violations continued after he was transferred, and states that some of the disputes have been resolved. For example, plaintiff challenges the confiscation of his knee braces while in the Eastern SHU, and notes that he was allowed to wear knee braces after being transferred to the Clinton SHU. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 17, ¶ 70). None of the other claims rise to the level of "disputes which are capable of repetition and evading review," particularly now that plaintiff is no longer in DOCCS custody.[5] Therefore, the court will recommend granting summary judgment on all plaintiff's claims for injunctive relief.

## III. Eleventh Amendment - Official Capacity Monetary Damage Claims

### A. Legal Standards

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of*

---

[4] Plaintiff has been transferred at least once more, and is currently housed in Sing Sing Correctional Facility. (Dkt. No. 124-5, Sheehan Aff. Ex. A).

[5] Plaintiff's religious freedom claims are those with the greatest potential for repetition, but plaintiff does not assert that the alleged violations are ongoing. Moreover, for the reasons discussed below plaintiff has failed to state a claim for which relief can be granted on either First Amendment or RLUIPA grounds.

*Police*, 491 U.S. 58, 71 (1989)).  This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983.  *Id.* at 815 n.3.  An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted).

B.    **Analysis–All Defendants**

Plaintiff states that he is suing defendants in their individual and official capacities. (Compl. ¶ 10-b).  In this motion, defendants correctly argue that to the extent that plaintiff is attempting to sue them for damages in their official capacities or to the extent that his complaint can be interpreted as raising such official capacity claims, he is barred by the Eleventh Amendment from doing so.  (Dkt. No. 124-8, Def.'s  Mem. of Law at 14-15).  Accordingly, this court recommends that defendants' motion for summary judgment be granted insofar as all monetary claims raised by plaintiff against the defendants in their official capacity be dismissed with prejudice. Monetary claims against defendants in their individual capacities will survive, to the extent that summary judgment or dismissal is not recommended on other grounds.

IV.   **Personal Involvement/Respondeat Superior**

A.    **Legal Standards**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability for any constitutional claim.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  "The personal involvement of a supervisory

10

defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing, *inter alia, Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)).[6]

## B.    Analysis–Fischer

Plaintiff alleges that defendant Fischer failed to adequately train DOCCS staff and establish policies that would prevent the constitutional violations alleged in the complaint. Defendants argue that plaintiff has failed to allege sufficient personal involvement of defendant Fischer. Defendant Fischer was the Commissioner of

---

[6] Many courts in this Circuit have discussed whether all of the personal involvement factors, set forth in *Colon*, are still viable after *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). *See, e.g., Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). See also *Young v. Choinski*, 15 F. Supp. 3d 172, No. 3:10-CV-606, 2014 WL 962237, at *10-12 (D. Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

DOCCS at the time that the complaint was filed. Defendant Fischer delegated the day-to-day operations of the various correctional facilities to his staff. (Dkt. No. 124-6, Sheehan Aff., Ex. B, Fischer's Resp. to Inter.). Fischer's office was in Albany, not in any of the individual DOCCS facilities. *(Id.)* Fischer has denied any knowledge related to any of plaintiff's claims. (*Id.*). Without more, plaintiff has failed to establish that defendant Fischer was even aware of any of plaintiff's concerns or any lapses in policy. Plaintiff's conclusory allegations are not adequate to establish Fischer's personal involvement. Accordingly, the court recommends that summary judgment be granted to defendant Fischer as to all causes of action.

## V.    Eighth Amendment Claims

### A.    Legal Standards

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To establish an Eighth Amendment claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer*, 511 U.S. at 834.

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Hathaway*, 37 F.3d at 66 (quoting *Wilson v. Seiter*, 501 U.S. at 298). "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (only those deprivations denying "the minimal civilized measures of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation) (internal quotations and citations omitted).

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway*, 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*.

In regards to prison medical care, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).

13

Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

It is well established that disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

## B. Deliberate Medical Indifference

### 1. Shawangunk

#### a. Relevant Facts

Plaintiff claims that upon his return to Shawangunk after back surgery, Dr. Maryann Genovese, M.D. confiscated a special back brace provided by plaintiff's back surgeon and denied plaintiff's requests for its return. (Compl.¶ 6-e). Plaintiff also requested that if defendant Genovese could not provide his back brace, that she

prescribe a chair for his cell and/or a special mattress with greater back support than the standard prison issue mattress. (Compl. ¶¶ 6-f, 6-h). Genovese denied all these requests, and plaintiff's grievances were unsuccessful. (Compl. ¶¶ 6t - 6y). In connection with this dispute with Dr. Genovese, plaintiff claims to have spoken with Shawangunk Superintendent Joseph Smith, requesting the return of his back brace, and/or the addition of a special mattress or a chair to his cell. (Compl. ¶ 6-j). According to plaintiff, Smith stated that the issue "should be addressed with the medical department." (*Id.*). Smith also allegedly stated that "he had nothing to do with the medical department and a special mattress, chair and back brace was not a security issue" but that "he would look into the problem." (*Id.*). In plaintiff's response to the Statement of Material Facts, he also notes that Smith denied his grievance at Shawangunk requesting the special mattress, although this allegation does not appear in his complaint. (Dkt. No 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 8, ¶ 19; Dkt. No. 131-3, Pl.'s Ex. O).

Plaintiff claims that his back pain became so extreme that he could not get a full night's sleep, and woke up with stiffness and numbness. (Compl. ¶ 6-q). On August 21, 2007, plaintiff filed a grievance requesting that he be provided with a special mattress and chair for his cell. (Dkt. No. 131, Pl.'s Exhibit O). The grievance was denied, and plaintiff exhausted his administrative remedies. Plaintiff filed this complaint, claiming that the actions of Genovese and Smith constituted deliberate medical indifference and cruel and unusual punishment under the Eighth Amendment. Plaintiff also named Catherine Wells, a Shawangunk administrative nurse and Pedro

Diaz, a Regional Health Service Administrator based in Albany, New York, as defendants for their involvement during the administrative grievance process. (Dkt. No. 131, Pl.'s Ex. O and R).

**b.     Analysis–Defendant Smith**

Only defendant Smith moves for summary judgment as to the medical indifference claim arising from the refusal to allow plaintiff a back brace, special mattress, or chair while in Shawangunk.  Defendant Smith alleges that he was informed of plaintiff's back problems, but deferred to the medical department.  (Def.'s Mem. of Law at 10).  Beyond mere speculation, plaintiff does not allege that defendant Smith had any authority to override the medical determinations of Dr. Genovese.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) (the failure of non-doctors at a prison to intercede in the medical treatment of an inmate is not unreasonable, because they lack the authority to intervene in medical decisions). Moreover, Smith's alleged statement that he would "look into it" is not by itself, a demonstration of personal involvement.  *See Garrido v. Coughlin*, 716 F. Supp. 98, 100 (S.D.N.Y. 1989); *Parks v. Smith*, No. 08-CV-586, 2011 WL 4055415, at *14 (N.D.N.Y. Mar. 29, 2011) (Rep't-Rec.), *adopted*, 2011 WL 4055414 (N.D.N.Y. Sept. 12, 2011).  The fact that Smith issued an unfavorable grievance report on this claim, which plaintiff raised for the first time in opposition to this motion, does not change the outcome.  Smith's denial of plaintiff's grievance expressly relied on the medical determination of Dr. Genovese and does not give rise to a constitutional claim.  (Dkt. No. 131-3, Pl's Ex. O).  *See Brock v. Wright,* 315 F.3d 158, 164 (2d Cir. 2003) (prison

16

superintendent with no medical training who deferred completely to a prison doctor in ruling on a grievance regarding medical care, while perhaps negligent, was not "deliberately indifferent"). Therefore, the court recommends that defendant Smith's motion for summary judgment on the medical indifference claim in plaintiff's First Cause of Action be granted.

### 2.     Eastern

#### a.     Relevant Facts

On May 13, 2009, plaintiff was transferred to Eastern. (Compl. ¶ 8-j). Defendant Steven Schoonmaker, a Correctional Officer, escorted plaintiff along with several other prisoners to their respective cells. (*Id.*). When Schoonmaker directed plaintiff to the top bunk of a double-bunk cell, plaintiff told him that "he could not be placed in a double-bunk cell, especially on the top bunk because of his back injury and bad knees." (*Id.*). Defendant Schoonmaker repeated the order to go into the assigned cell, and plaintiff "stated that he would not go into the cell because of his back injuries and bad knees, and to do so would put his health in jeopardy." (Compl. ¶ 8-k), Plaintiff was ticketed for misbehavior and escorted to SHU. (*Id.*).

Plaintiff alleges that the order to enter the double-bunk cell, and the assignment to a top bunk, constituted cruel and unusual punishment. (Compl. ¶ 8-k). Plaintiff also alleges that the assignment was precipitated by the deliberate medical indifference of Defendants Thomas Griffin and Olga Khramova of Shawangunk, who

completed the screening forms allowing plaintiff to be placed into a double-bunk cell. (Compl. ¶ 8-I). Plaintiff contends that this contradicted a 2001 Shawangunk medical evaluation form which indicated that plaintiff's medical history required assignment to a bottom bunk bed. (Compl. ¶ 9-e; Dkt. No. 131-3, Pl.'s Ex. D).

On June 2, 2009, plaintiff went to his scheduled medical appointment with defendant Dr. Mikhail Gusman, where plaintiff requested a medical permit to exempt him from placement in a double-bunk cell. (Compl. ¶ 9-j). After a physical examination, defendant Gusman would only issue a permit to limit plaintiff to a bottom bunk. (Compl. ¶ 9-I). Plaintiff also requested a special mattress to accommodate his back pain, and the return of his knee braces, which had been confiscated during his placement in SHU. (Compl. ¶ 9-m). Defendant Gusman refused both requests, but advised that plaintiff's knee braces would be returned once he was released from SHU. (*Id.*).

Plaintiff alleges that defendant Gusman's actions constitute deliberate medical indifference, in violation of the Eighth Amendment. Defendant Gusman has moved for summary judgment, arguing that plaintiff's request to be exempted from a double cell is unconnected to his back problems, that plaintiff's knee braces were confiscated for security reasons while plaintiff was in SHU, and that plaintiff's allegations amount to non-actionable disagreements about medical care. (Def.'s Mem. of Law at 10-11).

### b.  Analysis--Griffin, Khramova, and Schoonmaker

Plaintiff alleges that defendants Griffin and Khramova completed screening sheets which allowed plaintiff to be assigned to a top bunk, despite the attendant difficulties associated with his back problem.  (Compl. ¶ 8-I).  At times, plaintiff's complaint also alleges that the mere assignment to a double bunk cell violated his constitutional rights.  (Dkt. No 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 16, ¶ 62).  Based on the evidence before the court, it appears that plaintiff's condition was sufficiently serious to warrant assignment to a bottom bunk in 2001 (prior to back surgery) at Shawangunk and after his July 2009 medical evaluation at Eastern.  ( Dkt. No. 131-2, Pl.'s Ex. 1-X; Dkt. No. 131-3, Pl.'s Ex. D).  Thus, reading the facts presented by the plaintiff in the most favorable light, the court will assume for purposes of this motion that the potential aggravation of plaintiff's back problems constituted a "sufficiently serious" medical impairment.

However, the Court finds no record evidence from which a rational trier of fact could conclude that defendants Griffin, Khramova, and Schoonmaker's failure to assign plaintiff a bottom bunk was, at worst, anything more than carelessness or negligence. *See Felix Torres v. Graham*, 687 F. Supp.2d 38, 53 (N.D.N.Y. 2009). Negligently failing to assign an inmate to a lower bunk does not satisfy the subjective element of the legal standard governing claims of deliberate indifference to a serious medical need under the Eighth Amendment.  *See Goodson v. Willard Drug Treatment Campus*, 615 F. Supp. 2d 100, 102 (W.D.N.Y. 2009) ("[E]ven if there were sufficient evidence upon which a factfinder could reasonably conclude that defendants were

negligent in assigning plaintiff to a top bunk (and I do not believe that there is), that too would be insufficient."); *Faison v. Janicki*, No. 03-CV-647, 2007 WL 529310, at *2–3 (W.D.N.Y. Feb. 14, 2007) ("[E]ven assuming that Dr. Barranos's rescission of plaintiff's bottom-bunk permit amounted to a serious deprivation of his constitutional rights-which is doubtful-there is no evidence that Dr. Barranos acted with a culpable state of mind [where the plaintiff admitted in his deposition that the basis of his claim against Dr. Barranos was 'medical negligence']."); *Connors v. Heywright*, No. 02-CV-9988, 2003 WL 21087886, at *3 (S.D.N.Y. May 12, 2003) (dismissing prisoner's claim that defendants were "negligent to [his] medical needs" in that they, inter alia, placed him in a top bunk despite the fact that he had a "mandatory lower bunk slip").

Plaintiff points to the inconsistency between the 2001 Shawangunk screening sheet, which limited plaintiff to a bottom bunk, and the 2009 screening sheet, which did not, as proof that Griffin ignored or failed to review plaintiff's medical history when completing the form. (Compl. ¶ 8-I). However, plaintiff makes no showing that Griffin knew and disregarded an excessive risk to plaintiff's safety. As to Khramova, plaintiff likewise concludes, without proof, that she must have ignored his medical history before completing her form. (*Id.*). Plaintiff offers nothing to support this notion, and mere speculation is insufficient to overcome a summary judgment motion. *Bennett v. Goord*, No. 06-3818-pr, 2008 WL 5083122, at *2 (2d Cir. Dec. 2, 2008) (citing *inter alia McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (speculation alone is insufficient to defeat a motion for summary judgment)). As to Schoonmaker, plaintiff offers no proof that Schoonmaker had any indication of

plaintiff's medical history or did anything more than escort plaintiff to his assigned cell.

Even taking the facts in the light most favorable to the plaintiff, the actions of the moving defendants do not support a constitutional claim. Accordingly, the court recommends that defendants Griffin, Khramova, and Schoonmaker's motion for summary judgment on plaintiff's Third Cause of Action be granted.

### c.    Analysis--Defendant Gusman

Defendant Gusman evaluated plaintiff after his transfer to Eastern, and considered plaintiff's requests to be excluded from double bunk cells, to be issued a special mattress due to his back pain, and to be allowed to wear knee braces while being held in SHU. (Compl. ¶ 9-k - 9-m). Defendant Gusman denied each of these requests, but did restrict plaintiff to a bottom bunk, consistent with his previous celling situation at Eastern. (Compl. ¶ 9-i). The exhibits show that Dr. Gusman provided significant medical treatment while plaintiff was in SHU, including knee x-rays. (Dkt. No. 131-3, Pl.'s Ex. B). Plaintiff's allegations against Gusman amount to nothing more than a dispute over what further medical treatment was appropriate. The fact that plaintiff was ultimately allowed to wear his knee braces after being transferred to a different facility has no bearing on the legitimacy of Gusman's treatment. *Gillespie v. New York State Dept. of Correctional Services*, No. 9:08-CV-1339 (TJM/ATB), 2010 WL 1006634, at *6, (N.D.N.Y. Feb. 22, 2010) (citing cases) (Rep't-Rec.), *adopted*, 2010 WL 1006643 (N.D.N.Y. Mar 19, 2010) ("The mere fact that [DOCCS] physicians in other facilities may have previously

provided plaintiff with some of the treatments and accommodations he demanded at [Clinton] does not render the medical decisions of [N.P. Lashway] 'deliberate indifference.''). Even if those medical judgments rose to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Sonds*, 151 F. Supp. 2d at 312. Moreover, plaintiff's own exhibits do not show an existing permit for knee braces for the May to June 2009 time period at issue[7]. Therefore, the court recommends that defendant Gusman be granted summary judgment as to plaintiff's Fourth Cause of Action.

### C.    Conditions of Confinement (Eastern)--SHU Lighting

### 1.    Relevant Facts

While in SHU, plaintiff alleges that his cell had a night light which "was directly overhead and was so bright that it was impossible to sleep the entire time he was in Eastern SHU." (Compl. ¶ 9-a). During his confinement in SHU, plaintiff spoke with defendants William Brown and Thomas Griffin, who were making rounds, and complained "that the night light was to [sic] bright and that he could not sleep. . ." and that "the light was so bright that he could read a book, and he had not had a full night's sleep since he [had] been [in] SHU." (Compl. ¶ 9-f). In response to Brown's suggestion that plaintiff should put something over his eyes, plaintiff said that "he had tried that but every time he turn[ed] over it would come off and he would wake up."

---

[7] Plaintiff has included with his response to this summary judgment motion "medical equipment passes" for "neoprene knee sleeves" for the periods July 23, 2003 to July 23, 2004; December 21, 2004 to March 21, 2005; June 3, 2006 to January 3, 2007; January 29, 2007 to July 29, 2007; August 29, 2007 to March 1, 2008; February 29, 2008 to August 29, 2008; and August 21, 2008 to February 21, 2009. (Dkt. No. 131-2, Pl.'s Ex. 1V through 1Y.

(*Id.*).

Plaintiff's June 5, 2009 grievance, in which he requested that the night light be turned off at night so that he could sleep, was denied, and his appeal was unsuccessful. (Dkt. No. 131-2, Pl.'s Ex. 1U). In this action, Plaintiff alleged that the sleep deprivation caused by the night light in the Eastern SHU constituted cruel and unusual punishment, and named Brown and Griffin as defendants.

### 2. Analysis--Brown and Griffin

"[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (citing, *inter alia*, *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367 (N.D.N.Y. 2010)) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights."). "Requiring inmates to live in constant illumination can . . ., under certain circumstances, rise to the level of an Eighth Amendment violation." *Jones v. Rock*, No. 9:12-CV-447 (NAM/TWD), 2013 WL 4804500, *10 (N.D.N.Y. Sept. 6, 2013) (citing, *inter alia*, *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (an allegation that large fluorescent lights directly in front of and behind an inmate's cell that shown into his cell twenty-four hours a day, causing him grave sleeping problems and other mental and psychological problems stated a claim of cruel and unusual punishment that could withstand a motion for summary judgment). *See also Holmes v. Grant*, No. 03-CV-3426, 2006 WL 851753, at *3, 11-12 (S.D.N.Y. Mar. 31, 2006) (denying motion to dismiss plaintiff's claim that 24-hour illumination of the SHU

during his 35 days of confinement caused fatigue, loss of appetite, migraine

headaches, and other physical and mental problems because, as alleged, it would

sustain both the objective and the subjective prongs of an Eighth Amendment

analysis) (collecting cases).

The decisions evaluating Eighth Amendment claims based on continuous

lighting in the prison setting are very "fact-driven," turning on the degree of

illumination, the duration of the inmate's exposure, the extent of harm it causes, and

the penological justification for the lighting.[8]  *Booker v. Maly*, No. 9:12-CV-246

(NAM/ATB), 2014 WL 1289579, at *18 (N.D.N.Y. Mar. 31, 2014) (citing, *inter alia*,

*McGee v. Gold*, No. 1:04-CV-335, 2010 WL 5300805, at *5 (D. Vt. Aug. 3, 2010)

(Rep't-Rec.), *adopted*, *sub nom. McGee v. Pallito*, 2010 WL 5389996 (D. Vt. Dec. 20,

---

[8] The Ninth Circuit has noted:

> The precise role of legitimate penological interests is not entirely clear in the context of an Eighth Amendment challenge to conditions of confinement.  The Supreme Court has written that the test of *Turner v. Safley*, 482 U.S. 78 . . . (1987), which requires only a reasonable relationship to a legitimate penological interest to justify prison regulations, does not apply to Eighth Amendment claims. *Johnson v. California*, 543 U.S. 499, 511 . . . (2005) ("[W]e have not used *Turner* to evaluate Eighth Amendment claims of cruel and unusual punishment in prison. . . .) . . . The existence of a legitimate penological justification has, however, been used in considering whether adverse treatment is sufficiently gratuitous to constitute punishment for Eighth Amendment purposes. *See Rhodes v. Chapman*, 452 U.S. 337, 346 . . . (1981) ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'")

*Grenning v. Miller-Stout*, 739 F.3d 1235, 1240 (9th Cir. 2014) (some citations omitted). Other courts which have considered penological justification in the context of claims involving continuous prison lighting have related it to the subjective prong of the Eighth Amendment analysis.  *See, e.g., Chavarria v. Stacks*, 102 F. App'x 433, 436 (5th Cir. 2004) (plaintiff cannot establish the subjective element of an Eighth Amendment violation because he cannot show that his deprivation is unnecessary and wanton, given the security-related justification for the lighting policy in the administrative segregation area).

2010), *vacated and remanded on other grounds sub nom. Kimber v. Tallon*, 556 F. App'x 27 (2d Cir. 2014); *Chappell v. Mandeville*, 706 F.3d 1052, 1058-59 (9th Cir. 2013) (comparing cases). Taking these factors into consideration, and resolving all ambiguities and drawing all reasonable inferences in favor of the plaintiff, the court recommends granting defendant's motion for summary judgment on plaintiff's cause of action for cruel and unusual punishment related to the illumination of the SHU.

Defendant has offered evidence that the night light currently used in the Eastern SHU is 13 watts, but the declarant, the current Deputy Superintendent for Security at Eastern; did not offer any objective evidence that the light in plaintiff's cell in 2009 was actually 13 watts. (Dkt. No. 124-3, Wilkins Decl. ¶ 6). However, even if brighter than 13 watts, constant illumination of the SHU cell does not necessarily violate the Eighth Amendment. *See Vasquez v. Frank*, 290 F. App'x 927, 929 (7th Cir. 2008) (24-hour lighting involving a single, 9-watt fluorescent bulb does not objectively constitute an "extreme deprivation."); *McBride v. Frank*, No. 05C1058, 2009 WL 2591618, at *5 (E.D.Wis. Aug.21, 2009) (constant illumination from a 9-watt fluorescent bulb does not objectively deny "the minimal civilized measure of life's necessities."); *Wills v. Terhune*, 404 F. Supp. 2d 1226, 1230-31 (E.D. Cal. 2005) (holding that 24-hour illumination by 13-watt bulb was not objectively unconstitutional); *Pawelski v. Cooke*, No. 90-C-949-C, 1991 WL 403181, at *4 (W.D. Wis. July 18, 1991) ("Having a single 40 watt light bulb on 24 hours a day for security purposes amounts to no more than an inconvenience to the segregation inmates."), *aff'd*, 972 F.2d 352 (7th Cir. 1992) (table). Plaintiff disputes defendants' description

of the night light but states only that it was bright enough to "read a book." (Complaint 9-f). Plaintiff also admits that he could cover his eyes and fall asleep, but would wake up when he would turn over and the cover would come off. (*Id.*). *Cf. Quick v. Graham*, No. 9:12-CV-1717, 2014 WL 4627108 (N.D.N.Y. 2014) (denying summary judgment motion where plaintiff claimed that cell lights were never dimmed at night); *Keenan*, 83 F.3d 1083, 1090-91 (lighting from "large fluorescent lights" was unconstitutional where plaintiff alleged that he "had no way of telling night or day").

Plaintiff was in the Eastern SHU for 48 days. (Wilkins Decl. ¶ 2). The relatively short duration that plaintiff was exposed to the uncomfortable illumination does not, on its face, compel summary judgment in favor of defendants. *See Holmes v. Grant*, No. 03-CV-3426, 2006 WL851753 (S.D.N.Y. 2006) (where plaintiff alleged specific health problems resulting from twenty-four hour lighting during 35 day stay in SHU, he had adequately stated a constitutional claim). However, "[i]n order to succeed on a claim of illegal illumination, plaintiff must produce evidence that the constant illumination had harmful effects on his health beyond mere discomfort." *Vasquez v. Frank*, No. 05-C-528-C, 2007 WL 3254702, at *5 (W.D.Wis. Nov. 2, 2007); *see also Quick*, 2014 WL 4627108 at *8 (denying defendants' motion for summary judgment where plaintiff alleged that he suffered migraine headaches and delusions as a result of sleep deprivation); *Holmes,* 2006 WL851753 at *11 (denying motion to dismiss where plaintiff alleged that sleep deprivation caused fatigue, loss of appetite, migraine headaches, and other physical and mental problems). Plaintiff does not allege any health effects resulting from the alleged sleep deprivation that would

rise to the severity necessary to trigger Eighth Amendment concerns. Instead, plaintiff only claims that he was unable to get a full night's sleep. (Compl. ¶ 9-f; Dkt. No. 131-2, Pl.'s Ex. 1U).

Finally, defendants argue that the night lights serve a legitimate penological function. Both plaintiff and defendant agree that the SHU cell doors are solid doors with a small window measuring approximately either 8 inches by 10 inches, or 8 inches by 16 inches, and a "feed-up hatch" that is closed unless a meal is being served. (Wilkins Decl. ¶ 21; Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 3, ¶ 6). Given the limited visibility, defendants argue that the night lights provide the necessary illumination to allow security staff to see into the cell in order to protect both correctional facility staff and inmates from physical harm. (Wilkins Decl. ¶ 8). It is well-recognized that the ability to maintain the safety of inmates and the officers is a legitimate penological interest. *Booker v. Maly*, 2014 WL 1289579 at *19. Indeed, plaintiff does not challenge the security purpose of the light in his pleadings.[9]

After consideration of the intensity of the nighttime lighting, the limited exposure of plaintiff during his stay in SHU, the lack of any identifiable health or other deleterious impacts from the illumination, and the legitimate penological interest in being able to monitor SHU inmates 24 hours a day, the court recommends granting defendants' motion for summary judgment as to the Eighth Amendment claim in the Fourth Cause of Action related to the SHU night light.

---

[9] In plaintiff's grievance, plaintiff argued that the security goals could be adequately met by equipping security guards with flashlights, but did not press that claim in this proceeding.

## V. Due Process/Right to Privacy (Eastern)

### A. Procedural Due Process

#### 1. Relevant Facts

Plaintiff was ticketed for three violations arising from the refusal to enter the assigned cell: refusal to obey a direct order; interference with an employee; and failure to follow facility regulations and staff directions. (Dkt. No. 124-7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript at 4-5). Plaintiff's disciplinary hearing before defendant Captain Louis Pingotti of Eastern was held on May 16, 2009, May 19, 2009, and May 29, 2009. (Compl. ¶¶ 9-b, 9-d, 9-g). The hearing was adjourned several times to allow for obtaining evidence and identifying potential witnesses. (Dkt. No. 124-7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript). Plaintiff pled not guilty to the three charges. (*Id.* at 5). On the first day of the hearing, May 16, plaintiff raised an issue regarding the availability of his medical records, and the hearing was adjourned. (*Id.* at 9).

On May 19, 2009, the hearing re-opened and defendant Pingotti provided plaintiff with three documents related to his back condition. (*Id.* at 11-14). Each document was read into the record: a May 11, 2009 double cell information sheet completed by defendant Thomas Griffin; a May 13, 2009 screening of physical assessment form for placement in a double cell completed by defendant Olga Khramova; and a December 6, 2001 screening physical assessment and placement for a double cell form from Shawangunk. (*Id.*). Plaintiff had requested the first two documents. Pingotti requested the third document on his own, noting that he "wanted

28

to make sure what your last facility said in case there was a contradiction." (*Id.* at 11). During the course of the hearing, plaintiff testified regarding his 2006 back surgery, 2008 physical therapy, and his physical therapist's exercise recommendations. (Dkt. No. 124-7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript at 5, 14-22, 24-7).

Following another adjournment, on May 29, 2009, plaintiff was allowed to call the doctor then on duty at Eastern, Dr. Bhavsar, as a witness. (*Id.* at 27-31). Dr. Bhavsar reviewed the various screening sheets and concluded that plaintiff should be assigned to a bottom bunk, but that double-bunking was appropriate. (*Id.* at 30). Dr. Bhavsar also stated that the screening sheets available upon plaintiff's transfer to Eastern did not indicate that a bottom bunk was required. (*Id.*). Dr. Bhavsar also scheduled plaintiff for a medical review. (*Id.* at 29).

Defendant Pingotti denied plaintiff's request to call his physical therapist as a witness. Pingotti explained the rationale for his decision - that the physical therapist had no direct knowledge of the incident that led to the disciplinary hearing, and there was no dispute that the inmate had been given a list of exercises. (*Id.* at 23). Plaintiff also did not know the physical therapist's name. (*Id.* at 26).

Defendant Pingotti denied plaintiff's request that the disciplinary hearing be adjourned until plaintiff had received a medical checkup, and issued his decision on May 29, 2009. (Dkt. No. 124-7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript at 35). Plaintiff was found guilty on all three charges, based upon defendant Schoonmaker's report and the evidence presented at the hearing. (*Id.*). The

disposition of the hearing was confinement in SHU, loss of commissary, packages and phones for a period of three months, with a start date of March 13, 2009[10]. (*Id.*).

Plaintiff contends that defendant's Pingotti's handling of the disciplinary hearing, including his refusal to call all the requested witnesses, indicated bias and violated his right to due process. (Compl. ¶ 9-i). Plaintiff also argues that defendant Pingotti's request for plaintiff's double cell information sheet from Shawangunk violated his right to privacy in his medical records. (Compl. ¶ 9-d). In the present motion for summary judgment, defendant Pingotti argues that plaintiff received due process, and that the weight of the evidence supports his conclusion. (Def.'s Mem. of Law at 4-7). Defendant Pingotti also argues that plaintiff did not raise any objection to the retrieval of plaintiff's Double Cell Information Sheet from Shawangunk, and that the document was obtained solely to investigate plaintiff's claim that he could not be double-bunked because of his back problems. (*Id.* at 6).

## 2. Procedural Due Process - Legal Standards

In order to begin a due process analysis, the court first determines whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determines whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by

---

[10] Plaintiff stayed in the Eastern SHU until June 29, 2009, when he was transferred to Clinton. (Wilkins Decl. ¶ 2, Plaintiff's Ex. 1Y).

due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004). A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon v. Howard*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest.

"SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted). In the absence of a detailed factual

record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short–*e.g.*, 30 days–and there was no indication that the plaintiff endured unusual SHU conditions. *Id*. at 65-66 (collecting cases).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some reliable evidence." *Id*. (*citing, inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

### 3.    Procedural Due Process - Analysis

Plaintiff was found guilty of three misbehavior charges in this case, and the penalty was three months in SHU, with loss of commissary, package and phone privileges. (Complaint ¶ 9-I). Plaintiff only served 48 days in the Eastern SHU before being transferred to Clinton. (Wilkins Decl. ¶ 2). At Eastern, plaintiff's only concerns about the condition of his confinement were the night light that kept him from getting a full night's sleep, and a restriction on wearing his knee braces due to security concerns. (Compl. ¶¶ 9-f, 9-m; Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 3, ¶ 6). The remainder of the penalty was served in Clinton SHU, and plaintiff has raised no concerns about conditions there. In fact, plaintiff has compared it favorably to Eastern SHU, noting that he was allowed to wear his knee braces in Clinton's SHU. (Pl.'s

Resp. to Def.'s Stmt. of Mat. Fact at 17, ¶ 70).

The ninety day period in SHU, and the 48 days spent under the disfavored conditions at Eastern, fall within the "short range" of disciplinary confinement. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (finding 30, 60, and 90 day SHU sentences within the short range of disciplinary sentences). Therefore, plaintiff's confinement in SHU implicates a liberty interest only if "the conditions were more severe than the normal SHU conditions."[11] *Palmer,* 364 F.3d at 64. "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Id.* (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir.1998)). Plaintiff alleges that the SHU night light kept him from getting a full night's sleep, and that he was denied use of knee braces while in SHU. The court doubts that the constant illumination and the confiscation of knee braces, which applied to all inmates in the Eastern SHU, would qualify as "atypical and significant hardships" that, over a period of relatively limited confinement, would implicate a liberty interest. (*See* Wilkins Decl. Ex. A and B (policy documents noting that inmate property may be confiscated upon entry to SHU)). But even assuming that plaintiff's confinement in the Eastern SHU implicated a liberty interest, he received adequate due process in connection with the disciplinary

---

[11] "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

hearing.

A review of the record shows that plaintiff was afforded notice of the charges, a hearing, and the opportunity to present witnesses. Plaintiff also received a written reason for the disposition at the close of the hearing. (Dkt. No. 124-7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript).

An inmate is entitled to a decision-maker who does not "prejudge the evidence and who cannot say . . . how he would assess evidence he has not seen yet." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing *inter alia Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)); *Tellier v. Scott*, 94 Civ. 3459, 2004 WL 224499, at *8 (S.D.N.Y. Feb. 5, 2004) (citations omitted). However, prison hearing officers 'are not held to the same standard of neutrality as adjudicators in other contexts." *Id.* (citing *inter alia Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1994)).

The evidence presented demonstrates that the hearing officer was not biased and that plaintiff otherwise received adequate process. During the course of the hearing, defendant Pingotti adjourned the proceeding several times to allow plaintiff an opportunity to review documents or identify witnesses. (Dkt. No. 124-7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript). A medical doctor was allowed to testify as to defendant's back condition, even after plaintiff had admitted to refusing to enter the assigned cell. (*Id.* at 27-31). The hearing office excluded one witness–an unidentified physical therapist who could allegedly testify as to the potential difficulty for plaintiff to perform back exercises in a double bunk cell–but defendant Pingotti did consider a chart depicting those exercises, and plaintiff's related testimony. (*Id.* at

14-18).

Although due process includes a right to call witnesses, this right is not unfettered. *Alicea v. Howell*, 387 F. Supp. 2d 227, 234 (W.D.N.Y. 2005) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)). A hearing officer does not violate due process by excluding irrelevant or unnecessary evidence or testimony. *Kawalinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (citing *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)); *Chavis v. vonHagn*, No. 02-CV-119, 2009 WL 236060, at *62 (W.D.N.Y. Jan. 30, 2009) (citing *Kawalinski, supra*). For constitutional due process purposes (assuming that a liberty interest existed), all that is required is "some" or "a modicum" of evidence supporting the disciplinary determination. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (some evidence standard). Plaintiff in this case simply disagrees with defendant Pingotti's findings, which are supported by the evidence. Therefore, defendant Pingotti's motion for summary judgment as to plaintiff's allegations of a deprivation of due process in his Fourth Cause of Action should be granted, even assuming that plaintiff had demonstrated a liberty interest.

## B.    Right to Privacy

### 1.    Legal Standards

In the United States Constitution, there exists a right to privacy, protecting an individual's interest in avoiding the disclosure of personal matters. *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). This right is protected by the Due Process Clause. *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) (citing *Whalen*, 429 U.S. at 598-600). The right to

privacy has also been "characterized as a right to 'confidentiality,' which 'includes the right to protection regarding information about the state of one's health.'" *Matson v. Bd. of Ed. of City School Dist. of New York*, 631 F.3d 57, 64 (2d Cir. 2011) (quoting inter alia *Doe*, 15 F.3d at 267).

With respect to the "disclosure" of medical information, an inmate's privacy right varies with the inmate's condition, with a greater interest in preventing the disclosure of highly sensitive conditions. *Id.* (citations omitted). Prison officials may impinge upon the inmate's privacy right only to the extent that their actions are not "reasonably related to legitimate penological interests." *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999). Where the sensitive information is spread gratuitously through "humor or gossip," it is more likely that the inmate's right to privacy will have been violated. *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 220 (citing *Powell*, 175 F.3d at 112).

### 2.    **Right to Privacy– Analysis**[12]

Defendant Pingotti has moved for summary judgment on the alleged breach of privacy during the disciplinary hearing. (Dkt. No. 124-8, Def.'s Mem. of Law at 5). Even reading the complaint in the light most favorable to the plaintiff, there was a legitimate penological purpose for obtaining the screening sheet, as plaintiff's primary argument during the disciplinary hearing was that his medical condition prohibited

---

[12] In his First Cause of Action, plaintiff alleges that, while at Shawangunk, defendant Genovese unlawfully released plaintiff's medical records in violation of New York State regulations. Plaintiff does not identify the nature of the records allegedly released, and defendants do not address the issue in the present motion for summary judgment. Therefore, the court will not address this issue in this motion.

assignment to a double-bunk cell. In fulfilling his duties, defendant Pingotti sought the best available source of the information. Moreover, plaintiff's back and knee problems, to the extent that they were "disclosed" during the hearing, are not the sort of impairment which "carr[ies] with it the sort of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition." *See Matson v. Bd. of Education of the City School Dist. of New York*, 631 F.3d 57, 61 (2d Cir. 2010) (finding that disclosure of fibromyalgia would not expose a person to discrimination or intolerance). Accordingly, the court recommends that defendant Pingotti's motion for summary judgment be granted as to the Fourth Cause of Action.

## VI. Retaliation/Verbal Harassment (Shawangunk)

### A. Relevant Facts

Plaintiff alleges that numerous personnel at Shawangunk retaliated against him for filing various grievances at the facility, as well as for receiving a settlement payment in connection with prior litigation against officials at Attica Correctional Facility. (Compl. ¶ 8-a). Plaintiff claims that each time that he filed a grievance, his cell was searched immediately afterwards[13]. (Dkt. No 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 13, ¶¶ 46, 48). Plaintiff also claims that his wife was denied entrance to Shawangunk on a visiting day, and that he was transferred to another facility as retaliation for his past grievances and receipt of the settlement payment. (Compl.¶8-b). Plaintiff alleges that Correctional Councilor Earl Boddison, Superintendent Joseph

---

[13] Plaintiff states that his "cell was destroyed" in a cell search on or about April 16, 2009, but does not identify any personal property that was removed or destroyed. (Compl. ¶ 8-e).

Smith, Superintendent John Maly, Lt. Gardner, Lt. Palen, Sgt. Kimbler and C.O. Brooks participated in these retaliatory actions. (Compl. ¶ 8-e,8-f,8-h). The only alleged retaliation addressed in this summary judgment motion is defendant Maly's response to plaintiff's question regarding the transfer. Maly allegedly "smiled and said, 'have a nice day Mr. Jones." (Compl. ¶ 8-h). Defendant John Maly has moved for summary judgment solely in regards to this exchange. ((Dkt. No. 124-8, Def.'s Mem. of Law at 12-13).

### B. Legal Standards

It is well established in the Second Circuit that verbal abuse, whether threatening, vulgar, or racial in nature, does not, by itself, rise to the level of a constitutional violation. *See, e.g.*, *Purcell v. Coughlin* 790 F.2d 263, 265 (2d Cir. 1986); *Webster v. Holmes*, 694 F. Supp. 2d 163, (N.D.N.Y. 2010)(collecting cases); Ramirez *v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996).

### C. Analysis

Plaintiff has interpreted Maly's response "have a nice day Mr. Jones," as proof of a retaliatory motive for his transfer. In this motion, defendant Maly ignores the other allegations of retaliation in the complaint and narrowly argues that his response to plaintiff is not actionable in a federal civil rights action. To the extent that plaintiff is suing over the comment alone, the court agrees that even if the remark could be interpreted as harassment, it does not give rise to a constitutional claim. Therefore, defendant Maly should be granted summary judgment solely as it relates to any allegation of verbal harassment.

Defendant Maly must still remain part of this litigation, as plaintiff's Third Cause of Action alleges that Maly was personally involved in other retaliatory conduct, including the denial of plaintiff's visitation privileges. (Compl. ¶ 8-e). Because defendant Maly did not address these allegations in his motion for summary judgment,[14] he is not entitled to summary judgment with respect to plaintiff's further claims of retaliation. *See Salahuddin*, 467 F.3d at 278.

## VI. Religious Liberty (Shawangunk and Eastern) [15]

### A. Relevant Facts

Plaintiff converted to Judaism on or about January 2004, while in prison. (Dkt. 131-1, Pl.'s Ex. T). Plaintiff alleges that since his conversion, he "received a high sodium cold Kosher Diet three times a day, seven days a week for the past five years." (Compl. ¶ 7-m). Plaintiff also alleges that he has a history of high blood pressure, and so he sought a low-sodium Kosher alternative diet. (Compl. ¶¶ 7-e, 7-f).

Plaintiff alleges that he asked Rabbi Horowitz, a Shawangunk prison chaplain, for assistance in receiving "at least two hot meals per day and to change the Kosher Menu. . ." (Compl. ¶ 7-c). Plaintiff claims that Rabbi Horowitz refused to assist him.

---

[14] As noted above, none of the defendants identified in the retaliation claim (Earnel Boddison, Joseph Smith, Lt. Palen, Sgt. Kimbler, C.O. Brooks, Lt. Gardner, and John Maly) moved for summary judgment, except for the Maly verbal harassment issue addressed herein.

[15] Although the heading for plaintiff's second Cause of Action also references cruel and unusual punishment, and the equal protection clause, his pleadings with regard to the Kosher menu do not allege any of the elements necessary for an Eighth Amendment or Fourteenth Amendment claim.

(Compl. ¶ 7-i).[16]

Plaintiff submitted a request to John Rapp, Shawangunk Food Administrator, seeking a low sodium Kosher diet which included at least two hot meals per day. (Compl. 7-i) This request was denied. (Dkt. No. 131-2, Pl.'s Ex. 1-I). During the grievance process, Rapp advised that the Kosher menu is established by DOCCS Central Food Service, and that hot meals were only provided on Jewish holidays, with the exception of the Green Haven Correctional Facility. (*Id.*). Plaintiff exhausted his administrative appeals, which were unsuccessful.

## B. Legal Standards

### 1. Religious Land Use and Institutionalized Persons Act ("RLUIPA")

RLUIPA provides that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the plaintiff bears the burden of showing

---

[16] Plaintiff also alleges that Rabbi Horowitz was skeptical of his conversion and refused to provide him with information concerning the Jewish religion. However, the record demonstrates that Rabbi Horowitz signed plaintiff's change of religious designation form and plaintiff's form accepting the Kosher diet requirements. (Dkt. 131-3, Pl.'s Ex. T).

that his religious exercise has been burdened and that the burden is substantial.[17]
*Marria v. Broaddus*, 200 F. Supp. 2d 280, 297 (S.D.N.Y. 2002) (citing 42 U.S.C. §
2000cc-2(b)).  The burden then shifts to the government to show that the burden
furthers a compelling governmental interest ***and*** that it is the ***least restrictive*** means of
achieving that interest.  *Id.*  The act defines "religious exercise" to include "any
exercise of religion, whether or not compelled by, or central to, a system of religious
belief." 42 U.S.C. § 2000cc-5(7)(A).

A "substantial burden" is one that places "substantial pressure on an adherent to
modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F. Supp. 2d 487,
498 (S.D.N.Y.  2007) (citing, *inter alia, Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir.
1996)).  Inconvenience alone is insufficient to establish a substantial burden. *Id.*
(citing *Westchester Day School v. Village of Mamaroneck*, 379 F. Supp. 2d 550, 557
(S.D.N.Y. 2005)).  Furthermore, the substantial burden test presupposes that some
inconveniences may be so minor that they do not amount to a violation.  *See*
*McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) (discussing in a
footnote the applicability of the "time-honored maxim '*de minimis non curat lex*'").
However, the court should not attempt to engage in resolving disputes as to whether a
particular practice is "central" or "mandatory" to a particular religion in determining
whether a burden was substantial. *See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d
Cir. 2003) (discussing First Amendment protections).

---

[17] RLUIPA uses the term "substantial burden" in the language of the statute, removing any
ambiguity with respect to the extent of the burden required to establish a statutory claim.

## 2. First Amendment

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987). This framework is one of reasonableness and is less restrictive than the standard ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford*, 352 F.3d at 588.

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citations omitted). In *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The Second Circuit has recently examined the standard for analyzing a First

Amendment religion claim. *Holland v. Goord*, No. 13-2694, 2014 WL 3360615, at *4-7 (2d Cir. July 10, 2014). In *Holland*, the court discussed the degree of burden required for a First Amendment claim. *Id.* The court noted that it has not been decided in this Circuit whether, to state a claim under the First Amendment, the inmate must show at the onset that the disputed conduct "substantially burdens his sincerely held religious beliefs." *Id.* (citing *Salahuddin, supra* at 274-75; *Ford*, *supra* at 592 (where the court assumed without deciding that the substantial burden test applies)). The court in *Holland* did not decide the issue, rather the court assumed the continued validity of the substantial burden test and analyzed the case accordingly.[18] *Id.* This court will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid.[19]

Once a substantial burden is found, the court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid penological interests. *See King v. Bennett*, No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. March 30, 2007) (citing *Salahuddin*, 467 F.3d at 274). Finally, once prison officials state a legitimate

---

[18] This finding was supported by the fact that the court's "precedent squarely dictat[ed] that Holland's religious exercise was unconstitutionally burdened," a point that the defendants in that case did not challenge on appeal. *Holland*, 2014 WL 3360615 at *4.

[19] The definition of "substantial burden" is discussed above.

penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford*, 352 F.3d at 595.

## C.    Analysis

Defendants did not move for summary judgment as to plaintiff's First Amendment or RLUIPA claims.  However, the court recommends dismissing plaintiff's religious liberty causes of action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  This section provides that the court may dismiss an *in forma pauperis* action *sua sponte* at any time if the court determines that, *inter alia*, the action fails to state a claim on which relief can be granted.

### 1.    RLUIPA

As noted above, plaintiff was transferred from both Shawangunk and Eastern and has not been in DOCCS custody since August 2014.  Hence, injunctive relief against DOCCS is no longer possible and any claim for injunctive relief should be dismissed as moot.[20]  In addition, since only injunctive relief is available under RLUIPA, money damages are not available against the defendants, either in their individual or official capacities.  *Loccenitt v. City of New York*, No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013) (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 506-507 (S.D.N.Y. 2008) (citing cases)).  Thus, the court recommends *sua*

---

[20] In *Blalock v. Jacobsen*, No. 13-CV-8332, 2014 WL 5324326, at *3 & n.2 (S.D.N.Y. Oct. 20, 2014), the court discussed the possibility that RLUIPA claims for injunctive relief might not be moot upon an inmate's transfer if the "Commissioner's" policy continued to burden and adversely affect the plaintiff's rights, under the theory that the violation is capable of repetition, yet evades review. *Id.* (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 507 (S.D.N.Y. 2008)).  Here, plaintiff does not allege that the RLUIPA violations are ongoing since his transfer.

*sponte* dismissal of plaintiff's RLUIPA claim.[21]

### 2. First Amendment

While plaintiff may no longer obtain injunctive relief (either under RLUIPA or the First Amendment), based upon his transfers from Shawangunk and Eastern, further analysis is required with respect to a First Amendment claim for monetary damages against defendants in their individual capacities.

The necessary analysis for this case is identical to that performed in *Williams v. Fisher*, 2015 WL 1137644 and *Hamilton v. Smith*, 2009 WL 3199520. First, the record evidence establishes that named defendants Rapp and Rabbi Horowitz do not have any personal involvement in creating or altering the Kosher menu served at DOCCS facilities. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 10, ¶¶ 31, 33; Dkt. No. 131-3, Pl.'s Ex. V, W, X, and Z). The action against Rapp and Horowitz could be dismissed on this basis alone. *Williams,* 2015 WL 1137644, at *22-3.

However, even assuming that any defendant had personal involvement, plaintiff's First Amendment claim is futile, given the clear nexus between limiting the

---

[21] Even if injunctive relief were still available on the RLUIPA claim, dismissal would still be warranted as plaintiff fails to state a claim on which relief may be granted. Recent decisions in this district, discussed *infra*, rejected RLUIPA claims identical to plaintiff's, where otherwise valid religious menus do not meet a prisoner's dietary wants or medical needs. *See Williams v. Fisher,* No. 9:11-CV-379 (NAM/TWD), 2015 WL 1137644 (N.D.N.Y. Mar. 10, 2015) (finding compelling state interest in limiting menu options and not providing vegetarian Kosher meals); *Hamilton v. Smith*, No. 9:06-CV-805 (GTS/DRH), 2009 WL 3199520 (N.D.N.Y. Sept. 30, 2009)(finding that financial burden of creating low sodium Kosher menu was a compelling state interest warranting summary judgment in favor of DOCCs on RLUIPA claim); *Smith v. Perlman*, No. 09:11 CV-20 (MAD/CFH), 2014 WL 7333229 (N.D.N.Y. Dec. 18, 2014) (granting DOCCS summary judgment on Muslim inmate's RLUIPA claim seeking therapeutic diet which included halal meat); *see also Prins v. Coughlin*, 76 F.3d 504, 507 (2d Cir. 1996) (finding that inmate had no claim under the Religious Freedom Restoration Act arising from inability to obtain hot Kosher meals after prison transfer).

variety of menus and the economic and efficiency concerns of the state-wide prison system. *Williams*, 2015 WL 1137644, at *28-9; *Hamilton*, 2015 WL 3199520, at *5-6. Plaintiff does not allege that he cannot receive a Kosher meal, only that he cannot receive a Kosher meal that meets his preferences. Even if the plaintiff were given every benefit of the doubt by the court in considering the *Turner* and *O'Lone* factors, the legitimate penological concerns of maintaining order and meeting budgetary demands justifies the burden, if any, imposed on plaintiff's First Amendment rights. *Williams,* 2015 WL 1137644, at *24-29; *Hamilton*, 2015 WL 3199520, at *6. To hold otherwise, and allow plaintiff an individualized meal option outside the established DOCCS-wide menus could have a "significant ripple effect" on fellow inmates, and "open the door to the creation of various specialized menus for other inmates with different therapeutic and religious needs." *Hamilton*, 2015 WL 3199520, at *6. Therefore, the court recommends *sua sponte* dismissal of plaintiff's Second Cause of Action.

## VII.  Motion to Amend

### A.    Applicable Law

Pursuant to Fed. R. Civ. P. 15(a), a court should grant leave to amend a pleading "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Second Circuit has stated that, "[a] *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint, even if he makes the request after the court has entered judgment dismissing his original complaint." *Satchell v. Dilworth*, 745 F.2d

781, 785 (2d Cir. 1984) (citing *Bradley v. Coughlin*, 671 F.2d 686, 690 (2d Cir. 1982)). The Second Circuit has articulated the similarly liberal standards by which a court may allow a party to supplement a pleading with allegations regarding transactions, occurrences, or events that have transpired since the date of the original pleading:

> Fed. R. Civ. P. 15(d) permits a party to move to serve a supplemental pleading and the district court may grant such a motion, in the exercise of its discretion, upon reasonable notice and upon such terms as may be just. . . . [L]eave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading.

*Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (citations omitted).

Although Rule 15 generally governs the amendment or supplementation of complaints, where the proposed amendment seeks to add new parties, Fed. R. Civ. P. 21 governs. *Rush v. Artuz*, No. 00 Civ. 3436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct. 26, 2001). Rule 21 states that "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "In deciding whether to allow joinder, the Court is guided by 'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'" *Rush v. Artuz*, 2001 WL 1313465, at *5 (citations omitted). *Accord, Javier H. v. Garcia Botello*, 239 F.R.D. 342, 346 (W.D.N.Y. 2006).

A motion to amend, supplement, or join parties should not be denied unless there has been undue delay, bad faith, undue prejudice to the opposing party, or the amendment is futile. *Milanese v. Rust Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). A motion to amend may also be denied when the movant knew or should have known of the facts upon which the amendment is based when the original pleading

was filed. *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997). This is particularly true when the movant offers no excuse for the delay.

Generally, an amendment is futile if the pleading fails to state a claim or would otherwise be subject to dismissal. *U.M.G. Recordings, Inc. v. Lindor*, No. CV-05-1095, 2006 WL 3335048, at*2 (E.D.N.Y. Nov. 9, 2006) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979)). "In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 604 (2d Cir. 2005) (citation omitted). The court must accept the asserted facts as true and construe them in the light most favorable to the amending party. *Stetz v. Reeher Enterprises, Inc.*, 70 F. Supp. 2d 119, 121 (N.D.N.Y. 1999). When proposed amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment. *See, e.g., Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608, 2014 WL 113728, at *4 (S.D.N.Y. Jan. 13, 2014); *Gallagher v. Town of Fairfield*, 3:10CV1270, 2012 WL 370070, at *3 (D. Conn. Feb. 2, 2012); *S.S. Silberblatt*, 608 F.2d at 42-43; *WIXT Television, Inc. v. Meredith Corp.*, 506 F. Supp. 1003, 1010 (N.D.N.Y. 1980). In the limited circumstances when a summary judgment motion is opposed with a cross-motion to amend a pleading, the futility of the proposed amendment is judged by whether it would survive a motion for summary judgment. *Milanese v. Rust Oleum Corp.*, 244 F.3d at 110.

## B. Analysis

In his opposition to the motion for summary judgment, plaintiff requests that, if defendants' motion is not denied in its entirety, that he be allowed to amend his complaint to identify "Sgt. Todd" as the "Jane Doe" who ordered plaintiff to SHU and confiscated his knee braces. Plaintiff also seeks to add Robert Schattinger and Elizabeth Culkin, alleging that these individuals "are in charge of establishing the dietary menu" for DOCCS. (Pl.'s Mem. of Law at 16-7; Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 14, ¶ 54). Defense counsel did not file any response to plaintiff to address the motion to amend or offer any declarations from the new prospective defendants. Hence, the court must rely primarily on plaintiff's allegations in addressing whether his amended claims are futile, based on the standards of Fed. R. Civ. P. 12(b)(6).

Plaintiff fails to elaborate how Mr. Schattinger or Ms. Culkin are personally involved in this matter, beyond the bare allegation that these individuals establish the DOCCS menu. However, even assuming such personal involvement, the court concludes that plaintiff's claims against Mr. Schattinger and Ms. Culkin would be futile, for the reasons set forth in the *Williams* and *Hamilton* analysis in Section VI (C) of this report and recommendation. Similarly, the proposed claims against "Sgt. Todd[22]" would be futile for the same reasons set forth in Section V(A)(4) of this report

---

[22] Plaintiff offers no facts in support of his conclusion that Sgt. Todd confiscated plaintiff's knee braces and ordered him to SHU. In their motion papers, defendants identify "Lt. Mark" as the individual who ordered plaintiff to SHU. Both Sgt. Todd and Lt. Mark are listed in the Eastern SHU log book, submitted as plaintiff's Exhibit C.

and recommendation regarding defendants Schoonmaker and Gusman.  Applying the summary judgment standard as required, the court thus orders that plaintiff's motion to amend be denied.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for partial summary judgment (Dkt. No. 124, 125) be **GRANTED** on the grounds raised therein, and the following of plaintiff's claims dismissed:

1.  All claims for injunctive relief, to be dismissed as moot;

2.  All claims against defendants in their official capacities, to be dismissed with prejudice;

3.  All claims against defendant Fischer to be dismissed, due to lack of evidence of any personal involvement;

4.  Eighth Amendment claims, against defendants Smith, Griffin, Khramova, Schoonmaker, Gusman, and Brown only;

5.  Retaliation claim against defendant Maly, but only to the extent that it was predicated on an allegation of verbal harassment, to be dismissed with prejudice;

6.  Due process and right to privacy claims against defendant Pingotti;[23]

---

[23]  As noted above (at  p.2 and notes 12 and 14), the defendants' summary judgment motion did not address the following individual capacity claims for monetary damages, which survive: (1) claims against Dr. Maryann Genovese, Catherine Wells, and Pedro Diaz for medical indifference; (2) a claim against Dr. Genovese in her individual capacity for invasion of privacy; and (3) retaliation claims against Earnell Boddison, Joseph Smith, John Maly (involving conduct other than verbal harassment), Lt. Gardner, Lt. Palen, Sgt. Kimbler, and C.O. Brooks.

and it is further

      **RECOMMENDED** that all RLUIPA and First Amendment Religion claims (against defendants John Rapp and Rabbi A. Horowitz),  be **DISMISSED** *sua sponte*, and with prejudice;[24] and it is further

      **ORDERED**, that plaintiff's motion to amend (Dkt. No. 131) is **DENIED**.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


**Dated**: May 20, 2015

                                      **Hon. Andrew T. Baxter**
                                        **U.S.  Magistrate Judge**

---

[24] If this court's recommendations are approved, defendants Fischer, Smith, Griffin, Khramova, Schoonmaker, Gusman, Brown, Pingotti, Rapp, and Horowitz may be terminated from this action, based on the dismissal of all claims against them.